IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


ROBY M. WILSON,                      §
                                     §
              Plaintiff,             §
                                     §
v.                                   §
                                     §    CIVIL ACTION NO. H-04-2641
KRBE RADIO, INC., KRBE FM            §
RADIO LIMITED PARTNERSHIP,           §
D/B/A RADIO STATION KRBE, and        §
SUSQUEHANNA RADIO CORP.,             §
                                     §
              Defendants.            §


## MEMORANDUM OPINION AND ORDER


Plaintiff, Roby M. Wilson, brings this action against defendants, KRBE Radio, Inc., KRBE FM Radio Limited Partnership, d/b/a Radio Station KRBE, and Susquehanna Radio Corp., for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).[1]  Pending before the court are Defendants' Motion for Summary Judgment (Docket Entry No. 11) and Defendants' Objections and Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 13).  For the reasons set forth below, defendants' motion for summary judgment will be granted, and defendants' motion to strike will be denied.

--------------------------------

[1]See Plaintiff's Original Complaint, Docket Entry 1, pp. 5-6 ¶¶ 15-18.

## I.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). Entry of summary judgment is mandated "upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## II.  **Undisputed Facts**

On June 17, 2002, plaintiff was hired to work as an Account Executive for KRBE Radio Station (Station) whose General Manager is

-2-

Mark Shecterle.[2]  Plaintiff received the offer of employment from the Station's General Sales Manager, Kevin Isaaks.[3]  In January of 2003 Isaaks was replaced as the Station's General Sales Manager by a woman, Amy Dewbre.[4]  In March of 2003 plaintiff applied for the position of Local Sales Manager.[5]  Plaintiff was interviewed for that position by four people:  Dewbre, Shecterle, Matt Sunshine of Susquehanna, and Bob Allison, an outside consultant.[6]  In May of 2003 a woman, Sherry Dollar, was hired to fill the position of local sales manager.[7]  In June of 2003 Dewbre reassigned two of plaintiff's accounts, LCI and Sprint, to a woman, Phyllis Crowell.[8]  On July 29, 2003, plaintiff received an e-mail from a former Station employee, Tony King, asking for "contact info[rmation] for the guy running the new Toyota [C]enter Rockets deal,"[9] to which

---

[2]Affidavit of Mark Shecterle, Exhibit 2 attached to Docket Entry No. 11 (Shecterle Affidavit), ¶ 2.

[3]See Defendants' Motion for Summary Judgment, Docket Entry No. 11, p. 20 (citing Shecterle Affidavit at ¶ 3, and Plaintiff's Deposition, Exhibit 1 attached to Docket Entry No. 11 (Plaintiff's Deposition), p. 127.

[4]Affidavit of Amy Dewbre, Exhibit 3 attached to Docket Entry No. 11 (Dewbre Affidavit), ¶ 2.

[5]Id. at ¶ 3; Shecterle Affidavit at ¶ 11.

[6]Dewbre Affidavit at ¶ 3.

[7]Shecterle Affidavit at ¶ 12.

[8]Id. at ¶¶ 7 and 10.

[9]See Exhibit D attached to Affidavit of Mark Shecterle, Exhibit 2 attached to Docket Entry No. 11.

plaintiff responded with three names and titles:  Mike Davison-Creative Coordinator, Tad Brown-VP of Corporate Development, and Tim McDoogle-VP of Marketing.[10]  On July 31, 2003, Dollar and Dewbre discharged plaintiff and told plaintiff that the reason he was discharged was performance related.[11]   After plaintiff was discharged Shecterle authorized Dewbre and Dollar to hire a male, Michael Guerrero, as plaintiff's replacement.[12]   On the same day that the Station hired Guerrero, it also hired a female, Mercedes Norman.[13]

### III.  Defendants' Motion for Summary Judgment

Although plaintiff has alleged that defendants discriminated against him by failing to promote him, by reassigning two of his accounts, by depriving him of credit for sales, and by discharging him, discharge is the only adverse action for which he seeks damages in this lawsuit.[14]  Defendants argue that they are entitled

---

[10]Id.

[11]Dewbre Affidavit at ¶ 13.

[12]Id. at ¶ 14.

[13]Shecterle Affidavit at ¶ 16.

[14]Discharge is the only adverse employment action for which the plaintiff seeks damages.  See Plaintiff's Original Complaint, Docket Entry No. 1, p. 5 ¶ 16 (alleging that "[h]e was terminated pursuant to a pattern, policy, and practice that discriminated against him because of his gender"), and p. 6 ¶ 18 (alleging that
(continued...)

to summary judgment on plaintiff's claim for discriminatory discharge because plaintiff cannot establish a prima facie case of gender discrimination, because the Station had legitimate, non-discriminatory reasons for discharging the plaintiff, and because plaintiff cannot produce any evidence that the reasons for which the Station says it discharged him are pretextual.

## A.   Applicable Law

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  "The Title VII inquiry is 'whether the defendant intentionally discriminated against the plaintiff.'"  Roberson v. Alltel Information Services, 373 F.3d

---

[14](...continued)
"KRBE intentionally discriminated against Wilson because of his gender with respect to the conditions and manner of his termination").  See also Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 12, p. 10 (stating that plaintiff "does not claim damages as a result of [the Station's failure to promote him to the position of local sales manager which Dollar was hired to fill], but [that the Station's failure to promote him] demonstrates preferential treatment of Sherry Dollar"), and p. 19 (where plaintiff describes the "gender based motive for the decisions . . . [of which he] complains . . . particularly the final decision to terminate him for which he claims damages").

-5-

647, 651 (5th Cir. 2004) (quoting <u>United States Postal Serv. Bd. of</u> <u>Governors v. Aikens</u>, 103 S.Ct. 1478, 1482 (1983)).  Plaintiffs in employment discrimination cases may present their cases by either direct or circumstantial evidence, or both.  See <u>Machinchick v. PB</u> <u>Power, Inc.</u>, 398 F.3d 345, 350 (5th Cir. 2005); <u>Wallace v.</u> <u>Methodist Hosp. System</u>, 271 F.3d 212, 219 (5th Cir. 2001), <u>cert.</u> <u>denied</u>, 122 S.Ct. 1961 (2002).  In a Title VII case "direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis — not necessarily the sole basis, but <u>a</u> basis — for the adverse employment action at issue."  <u>Fabela v. Socorro Independent School District</u>, 329 F.3d 409, 415 (5th Cir. 2003).  Since plaintiff has presented only circumstantial evidence that his discharge was motivated by gender discrimination, the court applies the burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S.Ct. 1817 (1973), as construed by the Supreme Court in <u>Reeves v. Sanderson Plumbing</u> <u>Products, Inc.</u>, 120 S.Ct. 2097 (2000), and <u>Desert Palace, Inc. v.</u> <u>Costa</u>, 123 S.Ct. 2148 (2003).

The <u>McDonnell Douglas</u> analysis requires the plaintiff to present evidence establishing the existence of a prima facie case. See <u>Machinchick</u>, 398 F.3d at 350.  Once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action

-6-

at issue.  Id.  If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination. Id.  A plaintiff may meet this burden by producing evidence either that the defendant's proffered nondiscriminatory reasons are false or, if true, that his protected characteristic was, nevertheless, a motivating factor for the adverse employment action.  Id. at 351-352.  See also Reeves, 120 S.Ct. at 2109 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"), and Desert Palace, 123 S.Ct. at 2155 ("direct evidence of discrimination is not required in mixed-motive cases").  If a plaintiff demonstrates that a protected characteristic was a motivating factor in the employment decision, the defendant must then prove that the same adverse employment decision would have been made regardless of discriminatory animus.  See Rachid v. Jack-in-the-Box, Inc., 376 F.3d 305, 309-310 (5th Cir. 2004).

**B.  Analysis**

    1.  Prima Facie Case

To carry the initial burden on his claim for gender discrimination plaintiff must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for his position, and (4) he was replaced by someone outside his protected class or, in the case of disparate treatment, "that others similarly situated were treated more favorably."  See Okoye v. The University of Texas Houston Health Science Center, 245 F.3d 507, 512-513 (5th Cir. 2001).

Defendants argue that the plaintiff cannot satisfy the fourth prong of his prima facie case because following his discharge the Station hired another male to fill his position, Michael Guerrero.[15] However, defendants acknowledge that on the same day the Station hired Guerrero, it also hired a female account executive.[16]  The court concludes that defendants' acknowledgment that the Station hired a female account executive on the same day that it hired Guerrero is sufficient to constitute a prima facie showing that

---

[15]See Defendants' Motion for Summary Judgment, Docket Entry No. 11, pp. 11-12.

[16]See id. at 11 & n.22, stating that "Plaintiff stated in his deposition that another female Account Executive was hired on the same day as Michael Guerrero.  Although this is true, the female Account Executive was a rookie with no previous sales experience who was not given a book of business when she was hired.  In contrast, Michael Guerrero was an experienced Account Executive who was hired with the specific intent that he replace Plaintiff."

plaintiff was replaced by someone outside of his protected class.[17]
See Texas Dept. of Community Affairs v. Burdine, 101 S.Ct. 1089,
1094 (1981) (plaintiff's burden of establishing a prima facie case
is not onerous); Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41
(5th Cir. 1996) ("To establish a prima facie case, a plaintiff need
only make a very minimal showing."). See also Okoye, 245 F.3d at
513 (citing Nieto v. L&H Packing Co., 108 F.3d 621, 624 & n.7 (5th
Cir. 1997) (for the assertion that in this circuit "replacement by
a member of the same class does not negate the possibility . . . of
discrimination")).

2.  Non-Discriminatory Reasons for Discharge

Defendants argue that they are entitled to summary judgment
because plaintiff was discharged "for numerous, well documented
performance issues."[18]  Defendants assert that "Shecterle formed an
opinion by early 2003 that Mr. Wilson was a poor performer.  This
opinion was based on a number of both objective and subjective
factors."[19]  Objective factors include Shecterle's observation that
plaintiff's off-air sales for the period from July of 2002 to July

_____

[17]Although defendants assert that plaintiff testified at his
deposition that he was replaced by Guerrero, defendants have not
included the page cited for this fact in their submissions to the
court.  See Defendants' Objections and Motion to Strike, Docket
Entry No. 13, ¶ 4 (citing Plaintiff's Deposition at p. 270).

[18]Defendants' Motion for Summary Judgment, Docket Entry No. 11,
p. 12.

[19]Id. at p. 2.

-9-

of 2003 was less than $20,000 while the average off-air sales of other account executives for the same period was about $216,000, that plaintiff's on-air sales met only one monthly budget in 2003, and that plaintiff generated fewer on-air accounts than most of the other account executives while top performers generated three or

four times the number of accounts as plaintiff.[20]  Defendants also argue that plaintiff's discharge was prompted by "his disclosure of client contact information to a former KRBE employee, Tony King, who had resigned from KRBE to work for one of its direct competitors."[21]  Defendants assert that when Shecterle learned of these disclosures he directed Dewbre and Dollar to discharge the plaintiff and that they carried out his directive on July 31, 2003.[22]

   3.   Discriminatory Intent

       Since  defendants  have  met  their  burden  of  producing legitimate, nondiscriminatory reasons for discharging plaintiff, the  burden  shifts  to  plaintiff  to  produce  evidence  of

--------

       [20]Id. (citing Shecterle Affidavit at ¶ 8).

       [21]Id. at p. 6 (citing Shecterle Affidavit at ¶ 13, and Dewbre Affidavit at ¶ 12).

       [22]Id.

discriminatory intent.  See Machinchick, 398 F.3d at 350 (citing Reeves, 120 S.Ct. at 2109).  Plaintiff may establish discriminatory intent either through evidence showing either that the defendants' stated reasons for his discharge are false or unworthy of credence, or that if the reasons are true, his sex was, nonetheless, a motivating factor in the defendants' decision to discharge him. See id. at 351.

       (a)  Pretext

Defendants argue that the Station discharged plaintiff because he was under performing in the category of off-air sales, and because he disclosed client contact information.  Plaintiff responds that the defendants' allegations of poor performance and disclosure of client contact information are pretexts for gender discrimination because they are false and/or unworthy of credence. To defeat defendants' motion for summary judgment plaintiff must put forward evidence rebutting both of defendants' nondiscriminatory reasons for his discharge.  Machinchick, 398 F.3d at 351. This approach differs from that used in the mixed motive analysis under which a plaintiff need only prove that discriminatory animus was a motivating factor in an adverse employment decision.  Id.

## (1)  Off-Air Sales

Defendants assert that plaintiff's off-air sales for the period from July 2002 to July 2003 were less than $20,000 while the

average off-air sales of the other account executives for the same
period was about $216,000.[23]   Plaintiff responds that defendants'
assertion that other account executives averaged $216,000 in off-
air sales per year is inaccurate because monthly figures posted on
a board at the Station show that account executives averaged
approximately $72,000 per year in off-air sales.[24]   Although
plaintiff acknowledges that his off-air sales figures are lower
than those of the other account executives, he attributes his low
figures to Dewbre who, he argues, discriminated against him on the
basis of gender by refusing to correct coding errors that prevented
him from receiving credit for $7,000 dollars of off-air sales in
April and June of 2003, and by rejecting off-air sales packages
valued at $5,000 or $6,000 that he submitted for approval in May.[25]
Plaintiff states that

> [i]n April 2003, I had $5,000 in off-air dollars that I
> had incorrectly coded.  After I discovered that I had
> incorrectly coded the off-air dollars, I requested
> Ms. Dewbre to correct the coding within the allotted time
> period for making such corrections.  Ms. Dewbre referred
> me to accounting to make the corrections, however, when
> I went to accounting they said that only Ms. Dewbre could
> change the coding.  I went back to Ms. Dewbre and told
> her this, but she refused or failed to change the coding,

---

[23]Defendants' Motion for Summary Judgment, Docket Entry No. 11,
p. 2 (citing Shecterle Affidavit at ¶ 8).

[24]Plaintiff's Response to Defendants' Motion for Summary
Judgment, Docket Entry No. 12, p. 19.

[25]Id. at p. 16.

-12-

so it appeared that I had no off-air dollars for April, when in fact I had $5,000.

For May 2003 I had closed two transactions for the Earth Day promotion, however, Amy Dewbre rejected both of them, however, she had approved similar promotions for other account executives.  My total off-air dollar sales which Ms. Dewbre refused to approve were between $5,000 and $6,000 for May.

In June 2003, I had $2,000 in off-air dollars, which I had incorrectly coded.  Again I requested Ms. Dewbre to correct the coding with accounting, but she again refused to do so.

. . .

Additionally, in April and May 2003, I negotiated a promotion with TMPG.  Ms. Dewbre did in fact approve this promotion and I saw her sign the contract with TMPG.  I saw the notary public notarize it.  When I started to execute the promotion, which had also been approved in a promotions meeting, Ms. Dewbre then claimed she had not approved it.  However, that was not true because she had approved it and signed the contract.  Ms. Dewbre and Ms. Dollar then proceeded to renegotiate the promotion with TMPG and took the account away from me so that I did not reflect any non-spot dollars in connection with it.

It is apparent to me that Ms. Dewbre and Ms. Dollar were refusing to permit me to book any off-air dollars in order to be able to report to Mr. Shecterle that I had none, when in fact I did.  I came to this conclusion after seeing Exhibit F to the Mark Shecterle Affidavit, which is a June 26, 2003 e-mail from Mr. Shecterle to Ms. Dewbre and Ms. Dollar stating that he is extremely disappointed in my lack of non-spot activity, and that I have zero dollars booked in the second quarter.  The appropriate response from Ms. Dewbre would be to say that I in fact sold $2,000 in June which they had taken away from me and that I had sales of $5,000 in April which was incorrectly coded by me, but which Ms. Dewbre had failed or refused to correct the coding, in spite of the fact that I had requested her to recode on several occasions as I was supposed to do.  The fact that they did not respond to correct Mr. Shecterle's complaint about non-spot activity and in particular zero dollars in the

-13-

second quarter, means that they wanted him to have an
incorrect impression about my non-spot activity.  At my
termination meeting Ms. Dewbre told me that I was being
terminated for not having non-spot activity booked during
the second quarter.[26]

An e-mail from Dollar to Dewbre dated June 30, 2003, that was

copied to Shecterle shows that Dollar attributed plaintiff's lack

of off-air sales to his inability to code orders properly:

I wanted to let you guys know that there is not a lot of
activity coming from Roby Wilson.  . . . I asked him last
week in our one-on-one to delete the Tech TV order and
re-enter it back in the correct way.  Right now he has it
booked under spot revenue and it was an off-air
promotional fee for on-air giveaways last week.  He still
has not done this.  This should have been billed for non-
spot in June and today is now the last day of the month.
In our one-on-one today I asked again that he get that
done as soon as possible.  I guess it's apparent he has
not had much if any off-air because he does not know how
to put the orders in correctly.[27]

Dewbre explains in her affidavit that

[i]t is an Account Executive's responsibility to properly
code off-air revenue.  Any information about billing may
be recoded or corrected up until the end of the month by
Account Executives, at which time the client is billed
pursuant to the revenue contract listed in the Station's
system.  Mr. Wilson incorrectly coded his off-air revenue
for April and June 2003.  Despite multiple reminders from
myself and Ms. Dollar, Mr. Wilson chose not to recode his
billing prior to the deadline for such changes to be
made.  Mr. Wilson did not understand how to code or
recode off-air dollars after almost a year at the Station
and failed to recode his off-air dollars after multiple
requests.  I considered his lack of knowledge about the
coding system and his failure to follow repeated and

---

[26]Plaintiff's Affidavit, Exhibit A attached to Docket Entry
No. 12, pp. 4-5 ¶¶ 6, 8, and 11.

[27]Exhibit B attached to Dewbre Affidavit.

direct    instructions    to    be    serious    performance
deficiencies.[28]

The  summary  judgment  evidence  shows  that  Shecterle,  Dewbre,
and Dollar were all aware that plaintiff made off-air sales during
the second quarter that were not credited to him because they were
improperly coded.   Moreover,  plaintiff does  not  contest defen-
dants' assertion  that  apart  from  the  off-air  sales  that  were
improperly coded  and  the  off-air  sales  that  he  argues  Dewbre
wrongfully  failed  to  approve,  his  annual  total  of  off-air  sales
amounted to less than $20,000.   Therefore, even accepting as true
plaintiff's assertions  that  the  other  account  executives  averaged
$72,000  per  year  in  off-air  sales,  that  he  gained  personal
knowledge of  the  other  account  executives'  annual  off-air  averages
from  postings  made  at  the  Station,  and  that  he  was  wrongfully
denied credit for off-air sales that were improperly coded and that
Dewbre  wrongfully  failed  to  approve,  his  annual  total  of  off-air
sales  would  still  have  amounted  to  less  than  half  of  the  other
account  executives'  annual  average.   In  other  words,  if  plaintiff
were  credited  with  the  off-air  sales  he  contends  Dewbre  either
wrongfully  failed  to  recode  or  wrongfully  failed  to  approve,  his
annual total of off-air sales would have amounted to approximately
$31,000  ($20,000  plus  $11,000),  a  figure  which  is  substantially

_____

[28]Dewbre Affidavit at ¶ 6.

below the $72,000 annual average of off-air sales that he attributes to the other account executives.

Since, however, plaintiff has failed to support with sworn statements, his assertions that the other account executives averaged $72,000 per year in off-air sales, or that he gained personal knowledge of the other account executives' annual averages from postings made at the Station, the court must accept as uncontroverted, Shecterle's sworn statement that plaintiff's annual off-air sales totaled less than $20,000, and that the other account executives' annual off-air sales averaged $216,000.[29]  See Okoye, 245 F.3d at 515 (unsworn testimony "is not competent summary judgment evidence because it does not comply with the requirements of Federal Rule of Civil Procedure 56(e)."). Accordingly, the court concludes that plaintiff has failed to offer evidence from which a jury could reasonably conclude that the Station's assertion it discharged him for the nondiscriminatory reason that he lacked off-air sales comparable to those of the Station's other account executives is either false or unworthy of credence.[30]

_____

[29]See Shecterle Affidavit at ¶ 8.  Plaintiff's argument on this issue is made only in his Response to Defendants' Motion for Summary Judgment, Docket Entry No. 12, p. 19.

[30]See Plaintiff's Affidavit at ¶ 11 (stating that Dewbre and Dollar told plaintiff that he "was being terminated for not having non-spot [off-air] activity booked during the second quarter"). See also Plaintiff's Deposition at p. 228 (admitting that even if the off-air sales for which he contends he was wrongfully denied
(continued...)

**(2)  Disclosure of Client Contact Information**

Defendants argue that Shecterle decided that plaintiff should be discharged when he learned that plaintiff disclosed contact information for the Houston Rockets basketball team to Tony King, a former Station employee working for a direct competitor.[31] Shecterle states that

> [w]hen Sherry Dollar reported to me shortly after July 23 that Mr. Wilson had shared the contact information for the various individuals at the Houston Rockets, including various individuals in marketing, to a direct competitor, Tony King at Clear Channel 1, I made a decision to terminate Mr. Wilson. I consider the information he relayed to be confidential and proprietary to the Stations, and Mr. Wilson had no right to make a unilateral decision to convey that information to a direct competitor. KRBE's personnel handbook expressly prohibits any employee from relaying confidential information, a true and correct copy of an excerpt of which is attached as Exhibit B with Mr. Wilson's acknowledgment of receipt attached as Exhibit C. A true and correct copy of Mr. Wilson's e-mail is attached hereto as Exhibit D.[32]

Asserting that Texas law has long protected compilations of confidential information such as buyer contacts and market strategies, even when the same information can be obtained by

---

[30](...continued)
credit were added to the Station's calculation of his annual off-air sales, he would still have been below budget, i.e., he would still have failed to satisfy the off-air sales goal that he acknowledges the Station set for him).

[31]Defendants' Motion for Summary Judgment, Docket Entry No. 11, pp. 6, 18-19 (citing Shecterle Affidavit at ¶¶ 5, 8, 13, 19, and Dewbre Affidavit at ¶¶ 6, 15).

[32]Shecterle Affidavit at ¶ 13.

general inquiry, defendants argue that even if Shecterle mistakenly believed that plaintiff's disclosure of client contact information to King violated company policy, this reason for plaintiff's discharge is legitimate and nondiscriminatory.[33]

It is undisputed that King sent plaintiff an e-mail requesting contact information for the Houston Rockets and that plaintiff responded with the names and titles of three individuals associated with the Rockets.[34]  Moreover, plaintiff agrees that an Account

Executive should not share his contact list with a competitor.[35] Although plaintiff argues that the information he disclosed was not confidential because it came from business cards that he received from the individuals and was not related to the Station's business, plaintiff does not contest defendants' representation that the Houston Rockets basketball team was at the time a Station client,[36]

---

[33]Defendants' Motion for Summary Judgment, Docket Entry No. 11, pp. 6, 19.

[34]See Exhibit D attached to Affidavit of Mark Shecterle, Exhibit 2 attached to Docket Entry No. 11.

[35]See Plaintiff's Deposition at p. 234.

[36]See Defendants' Motion for Summary Judgment, Docket Entry No. 11 at p. 6 (citing Dollar's e-mail of July 29, 2003, written to Shecterle and copied to Dewbre, Exhibit D attached to Dewbre Affidavit stating, "I asked Roby [i.e., plaintiff] why Tony was
(continued...)

that the disclosures were made from the Station via plaintiff's work computer to King who worked for a direct competitor, or that upon learning of the disclosure Shecterle directed Dewbre and Dollar to discharge the plaintiff for making the disclosure.[37] Regardless of whether the disclosure constitutes a violation of the Station's confidentiality policy, plaintiff has failed to offer any evidence from which a reasonable jury could conclude that defendants' assertion that Shecterle decided to discharge plaintiff because he disclosed client contact information to King is false or unworthy of credence.

        (b)  Motivating Factor

    Since the court has concluded that plaintiff has failed to produce evidence from which a reasonable jury could conclude that defendants' stated nondiscriminatory reasons for his discharge are false or unworthy of credence, plaintiff may, in the alternative, raise a fact issue by presenting evidence that the defendants' reasons, while true, are only one of the reasons for the discharge, and that another motivating factor for the discharge was the

---

    [36](...continued)
e-mailing us regarding one of our clients and he said that Tony needed the contact for the Rockets (new business just placed by Shana on our station).").

    [37]See Plaintiff's Deposition at p. 236.

plaintiff's protected trait, i.e., gender.  See Machinchick, 398 F.3d at 352 (citing Desert Palace, 123 S.Ct. at 2155).

As evidence that gender discrimination was a motivating factor in the Station's decision to discharge him, plaintiff contends that Dewbre and Dollar treated him less favorably than they treated women.  Plaintiff argues that their preferential treatment of women is evidenced by Dewbre's decision to offer the local sales manager position to Dollar instead of to him, by Dewbre's reassignment of two of his accounts to a woman, Crowell, in May of 2003, and by Dewbre's and Dollar's use of the terms "sales sisters" and "girl power," and their comments at sales meetings and in e-mails that women are smarter and better able to handle money than men.[38] Defendants argue that this evidence fails to show that gender bias was a motivating factor in the Station's decision to discharge the plaintiff because plaintiff has failed to show that the women Dewbre and Dollar are alleged to have treated more favorably were similarly situated to him, and because the gender based comments of which he complains are no more than stray remarks.

### (1)  Disparate Treatment

Evidence that employees outside the plaintiff's protected class were treated more favorably than the plaintiff in similar situations can be relevant for showing discriminatory intent.  See

---

[38]See Plaintiff's Affidavit at ¶ 12.

<u>Keelan v. Majesco Software, Inc.</u>, ___ F.3d ___, 2005 WL 834481, *11
(April 12, 2005) (citing <u>Nieto v. L & H Packing Co.</u>, 108 F.3d 621,
623 & n.5 (5th Cir. 1997) (analyzing evidence of disparate treat-
ment on issue of pretext)).  Nevertheless, plaintiff has failed to
offer any evidence showing that Shecterle, Dewbre, or Dollar,
treated him less favorably than women who, like him, were
discharged either for failing to meet their off-air sales quota, or
for disclosing client contact information.  Instead, plaintiff
asserts that he was treated less favorably than women employees
because in May of 2003 Dewbre hired a woman, Dollar, to fill the
local sales manager position,[39] because in June of 2003 Dewbre
reassigned two of his accounts to a woman, Crowell,[40] and because
in July of 2003 Dewbre refused to approve a $10,000 sales package
that he submitted but approved an $8,000 sales package submitted by
a woman, Suzanne Senegal.[41]  Because plaintiff fails to offer
evidence showing that he was clearly better qualified for the local
sales manager's position than Dollar, fails to contest defendants'
evidence that in exchange for the two accounts Dewbre assigned to
Crowell he received an account of equal or greater value, and fails
to offer evidence that his disapproved sales package was comparable

---

[39]See <u>id.</u> at ¶ 16.

[40]See <u>id.</u> at ¶ 15.

[41]See <u>id.</u> at ¶ 9.

to Senegal's approved sales package, and does not seek damages for failure to promote or disparate terms and conditions of employment, the court is not persuaded that plaintiff's evidence of disparate treatment is probative of whether the Station's decision to discharge him for lack of off-air sales and for disclosure of client contact information was motivated by gender bias. Accordingly, the court concludes that the disparate treatment allegedly evidenced by plaintiff's inability to promote, to maintain certain accounts, or to book certain sales does not constitute evidence that would allow a reasonable jury to infer that gender bias was a motivating factor in the Station's decision to discharge him.

Not only does plaintiff fail to provide evidence of disparate treatment that would allow a reasonable jury to infer that the decision to discharge him was motivated by gender bias, but the record does contain substantial amounts of uncontroverted evidence to the contrary. For example, plaintiff does not contest Shecterle's sworn statements that "[b]efore Mr. Wilson left the employment of KRBE, there were 10 Account Executives at the Station, five female and five male . . . [and that a]t the current time, KRBE employs six females and five males as Account Executives."[42]   Nor does plaintiff contest Shecterle's sworn

---

[42]Shecterle Affidavit at ¶ 15.

-22-

statement that he was replaced by a male, Guerrero.  While not
outcome determinative, this fact is material to the question of
discriminatory intent.  See Nieto, 108 F.3d 624.  Moreover,
Shecterle, the Station's General Manager who approved plaintiff's
hiring, was the same supervisory employee who issued the directive
to discharge him.  The Fifth Circuit has held that situations like
this give rise to an inference of non-discrimination because it is
unlikely that a decision maker "would hire workers from a group one
dislikes (thereby incurring the psychological costs of associating
with them), only to fire them once they are on the job."  Id.
(quoting Brown, 82 F.3d at 658).

In his deposition plaintiff stated that although he believes
Dewbre and Dollar harbored discriminatory animus for him based on
gender because they belonged to an organization that promoted women
in the media, he also stated that he believes that once Shecterle
learned that he had disclosed contact information for the Houston
Rockets to a direct competitor, Shecterle told Dewbre and Dollar
"just go ahead and get rid of him, then, if he's talking to
competitors."[43]  Although plaintiff also stated that he believes
Shecterle's response to the notice that plaintiff had disclosed
client contact information would have been different if Dewbre and
Dollar had not been "feeding" Shecterle false information,

---

[43]Plaintiff's Deposition at p. 236.

presumably about his off-air sales performance, even if true, it has long been the law in this circuit that "Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."  <u>Id.</u> (quoting <u>Turner v. Texas Instruments, Inc.</u>, 555 F.2d 1251, 1257 (5th Cir. 1977), <u>overruled on other grounds by</u> <u>Burdine v. Texas Dept. of Community Affairs</u>, 647 F.2d 513 (5th Cir. 1981)).

### (2)  Remarks

When work place comments are presented as the only evidence of pretext, the Fifth Circuit applies the four-part test articulated in <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651 (5th Cir. 1996).  Under this test comments may serve as evidence of gender discrimination capable of raising a fact issue for trial if the offered remarks are (1) gender related, (2) proximate in time to the plaintiff's discharge, (3) made by an individual with authority over the discharge, and (4) related to the discharge.  <u>See</u> <u>Rubenstein v. Administrators of Tulane Educational Fund</u>, 218 F.3d 392, 401 (5th Cir. 2000) (citing <u>Brown</u>, 82 F.3d at 655).  The gender-based remarks that plaintiff attributes to Dewbre and Dollar do not meet this test.

Plaintiff asserts that Dewbre and Dollar

referred to themselves on a consistent basis as the "sales sisters" and "girl power" demonstrating gender

-24-

> bias in their business thinking.  They used these terms
> (and those set out below) at sales meetings and e-mails
> pertaining to business up to the time of my termination.
> Ms. Dewbre and Ms. Dollar both made comments to the
> effect that "women are smarter than men" and that "women
> handle money better than men."[44]

Accepting plaintiff's statements as true and assuming without deciding that the comments were made proximate in time to his discharge and that Dewbre and Dollar at least influenced the decision to discharge him, the court concludes that plaintiff fails to establish the fourth element of the four-part test, i.e., that the gender-based comments attributed to Dewbre and Dollar were related to his discharge.

Plaintiff fails to present any evidence showing that the gender-based comments attributed to Dewbre and Dollar were directed to him, made about him, or related to the decision to discharge him.  Nothing inherent in the remarks themselves indicates that they were related to plaintiff or his discharge.  Plaintiff admitted in his deposition that their use of the terms "sales sisters" and "girl power" "really didn't pertain to anything . . . [because] there was no context in which they [i.e., Dewbre and Dollar] would say that."[45]  Plaintiff has not presented any evidence showing that the decision to discharge him was influenced either by

---

[44]Plaintiff's Deposition at p. 236.

[45]Id. at p. 210.

how smart he is or how he handles money. Absent additional evidence of pretext, work place comments with no connection to an employment decision cannot create a fact issue regarding discriminatory intent. See Scales v. Slater, 181 F.3d 703, 712 (5th Cir. 1999). Accordingly, the court concludes that the gender-based remarks that plaintiff attributes to Dewbre and Dollar are not sufficient to infer that gender-based discriminatory animus constituted a motivating factor in the Station's decision to discharge him.

### IV.  **Defendants' Motion for Summary Judgment**

For the reasons explained above, Defendants' Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED.** Since even after considering all the statements contained in the plaintiff's affidavit the court concludes that the defendants are entitled to summary judgment, Defendants' Objections and Motion to Strike Plaintiff's Summary Judgment Evidence (Docket Entry No. 13) is **DENIED.**

**SIGNED** at Houston, Texas, on this the 4th day of May, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-26-